# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CIVIL ACTION NO. 1:08-CV-0670 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **DAVID S. RIGHTER,** | : | |
| **Defendant** | : | |

## MEMORANDUM

The United States of America brings this action against David S. Righter ("Righter") pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387.[1] The government alleges that Righter violated the Clean Water Act by discharging "pollutants into waters of the United States . . . without authorization[.]" (Doc. 1 ¶ 1.) Presently before the court is the government's motion for summary judgment (Doc. 14). For the reasons that follow, the motion will be granted.

## I. Statement of Facts and Procedural History[2]

Righter owns property located at 454 Warm Springs Road in Landisburg, Pennsylvania. (Doc. 16 ¶¶ 1-2). Using soil and rock fill from a neighbor's property, Righter constructed crossings over a wet area of his property, in order to access a hayfield at the end of his property. (Doc. 16 ¶¶ 5-6; Doc. 18 at 2-4). Righter did not

---

[1] Pursuant to 33 U.S.C. § 1319(b), this court has jurisdiction to enforce the CWA.

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Righter, the nonmoving party. See infra Part II.

obtain a permit for the construction of any of the crossings. (Doc. 16 ¶ 11; Doc. 18 at 2-3). The government filed the instant suit on April 9, 2008, and it sought penalties against Righter "for the discharge of pollutants into waters of the United States in Landisburg, Perry County, Pennsylvania without authorization by the United States Department of the Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a)." (Doc. 1 ¶ 1). It thereafter filed a motion for summary judgment (Doc. 14), asserting that the case presents no genuine issues of material fact and that it is entitled to judgment as a matter of law. The parties have fully briefed this issue, which is now ripe for disposition.

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

2

**III.   Discussion**

The Clean Water Act prohibits, with certain exceptions, "the discharge of any pollutant by any person." 33 U.S.C. § 1311(a). It provides a broad definition for "pollutant," which includes, *inter alia*, "dredged spoil," "biological materials," and "rock, sand, [and] cellar dirt[.]" § 1362(6). It defines "discharge of a pollutant" to mean "any addition of any pollutant to navigable waters from any point source[.]" § 1362(12). "Navigable waters" is defined as "the waters of the United States[.]" § 1362(7). Regulations of the Environmental Protection Agency (the "EPA") and the Army Corps of Engineers (the "Corps") have explained that this includes tributaries of interstate waters, see 33 C.F.R. § 328.3(a)(5), 40 C.F.R. § 230.3(s)(5), and "[w]etlands adjacent to waters[,]" see 33 C.F.R. § 328.3(a)(7), 40 C.F.R. § 230.3(s)(7). Finally, the CWA defines "point source" to mean "any discernible, confined and discrete conveyance[.]" 33 U.S.C. § 1362(14). Earth-moving equipment such as a bulldozer qualifies as a point source. United States v. Pozsgai, 999 F.2d 719, 726 n.6 (3d Cir. 1993) ("Courts have consistently held that dump trucks and bulldozers . . . qualify as 'point sources.'").

In sum, a violation of § 1311(a) occurs when a person discharges a pollutant from a point source into the waters or wetlands of the United States, unless an exception applies. The most notable exception is that, under 33 U.S.C. § 1344, a person may obtain a permit "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." Righter, however, admits that he had no permit. (Doc. 18 at 2-3). He also admits that he is a person who discharged a

3

pollutant into wetlands, (see Doc. 18 at 3), and that he used a bulldozer, which qualifies as a point source, "to introduce dirt and rock into the wetland area." (Id. at 4). Thus, most of the elements of the government's claim are established, and the only issue that remains to be determined is whether the land in question is a wetland within the jurisdiction of the Clean Water Act. Righter contends that the land is "prior converted cropland," which is excluded from "waters of the United States." 33 C.F.R. § 328.3(a)(8), 40 C.F.R. § 230.3(s). In addition, Righter argues that, for a variety of reasons, he should not be held liable for violating § 1311(a). The court will discuss these issues *seriatim*.

The court will first consider whether the "wetlands" at issue qualify as prior converted cropland, and as such, would be beyond the CWA's jurisdiction, because "[w]aters of the United States do no include prior converted cropland." 33 C.F.R. § 328.3(a)(8), 40 C.F.R. § 230.3(s). Prior converted cropland is defined as follows:

> [W]etlands that were drained, dredged, filled, leveled or otherwise
> manipulated, including the removal of woody vegetation, before
> December 23, 1985, and have not been abandoned, for the purpose of,
> or to have the effect of making the production of an agricultural

commodity possible, and an agricultural commodity was planted or produced at least once prior to December 23, 1985.[3] Generally, if the agricultural use of prior converted cropland ceases for five consecutive years, the land qualifies as abandoned.[4]

In applying this definition to Righter's land, it is important to note that the subject of the government's claim is the wetland portion of Righter's property, and *not* the hayfield adjacent to it. While the government admits that the hayfield area has been farmed for many years, it argues that there is no evidence that the wetland was ever farmed. (Doc. 15 at 25-26; Doc. 19 at 9). The court agrees that Righter's evidence on this point is insufficient to survive summary judgment.

On the issue of whether the wetland was ever cropland, Righter contends that "nobody actually knows for sure[,] as this goes back forty plus years." (Doc. 18 at 6 (emphasis in the original)). Righter offers the testimony of an expert witness, who analyzed the history of the wetland area and formed an opinion that farming

---

[3] An agency rule explains that the EPA and the Corps used the term prior converted cropland "as defined by the National Food Security Act Manual (NFSAM) published by the Soil Conservation Service (SCS)." Revision to the Definition of Waters of the United States to Exclude Prior Converted Cropland, 58 Fed. Reg. 45031 (Aug. 25, 1993). Accordingly, the definition quoted herein is taken from the National Food Security Act Manual. In addition, this definition was adopted in Pennsylvania's Administrative Code at 25 PA. CODE § 105.452(c).

[4] According to agency rule, "[t]he Corps and EPA will use the SCS provisions on 'abandonment[.]'" Revision to the Definition of Waters of the United States to Exclude Prior Converted Cropland, 58 Fed. Reg. 45034 (Aug. 25, 1993); see National Food Security Act Manual (citing 7 C.F.R. 12.33(c)); see also 25 PA. CODE § 105.452(c)(1).

extended into that site in 1963.[5] Even if the court assumes, *arguendo*, that this conclusion is correct, the site at issue would still not qualify as prior converted cropland. The government's properly supported motion for summary judgment provides evidence that the wetlands have not been farmed in more than five years,[6] and Righter has failed to set forth any evidence to the contrary. Thus, there is no genuine issue of fact, because no reasonable jury could conclude that the area in question is prior converted cropland which has not been abandoned. See FED. R. CIV. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party . . . must . . . set out specific facts showing a genuine issue for trial."); see also Anderson, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Even if the wetlands qualified as prior converted cropland at some time in the past, the definition of abandonment would prevent them from qualifying as prior converted cropland today. The court therefore concludes that the Clean Water Act applies to the wetland at issue.

Turning to Righter's other arguments, the court first notes that it is not persuaded by the contention that the effects of Righter's actions were *de minimis* and the rule of lenity should excuse him. The rule of lenity is a doctrine that applies

---

[5] The government has moved to exclude the testimony of this expert witness, Michael Stover, from evidence. (See Doc. 12). The court's conclusion that summary judgment is warranted in the instant case renders this motion moot.

[6] See Doc. 15, Ex. B at 28-30, 68, 91; see also Doc. 15, Ex. F at 10, Ex. G at 10.

to ambiguous statutory language. See, e.g., United States v. Cheeseman, 600 F.3d 270, 276 (3d Cir. 2010) ("If a statute is ambiguous and punitive in nature, the rule of lenity requires that any ambiguity in the statute be resolved in favor of the claimant." (internal quotation omitted)). Righter has not identified any alleged ambiguity,[7] and, most importantly, the court finds no ambiguity in the relevant provisions of the CWA. Therefore, the rule of lenity has no applicability to the instant case. Moreover, the court cannot accept Righter's conclusory argument that his "action should be considered *deminimus* [sic] and should not be punished[,]" (Doc. 18 at 5). Righter fails to present evidence proving that the impact his crossings had on the surrounding environment was, in fact, minimal.

Righter also asserts that he did not intend to disrupt or destroy wetlands, and he argues that "even if the creation of these earthen crossings constituted a 'discharge of a pollutant' into 'navigable waters' and thus a per se violation of . . . the Clean Water Act, it is not a strict liability type of violation." (Doc. 18 at 5). The law compels the court to reject this argument. The Third Circuit has held that "a discharge that is not in compliance with a permit 'is the archetypal Clean Water Act violation, and subjects the discharger to strict liability.'" United States v. Allegheny Ludlum Corp., 366 F.3d 164 (3d Cir. 2004) (quoting United States v. Pozsgai, 999 F.2d 719, 725 (3d Cir. 1993)). Hence, Righter's violation of the CWA does indeed subject him to liability. His allegations that the crossings were necessary for access

---

[7] Righter argues that "a strict look at the statutory definition of 'discharge of a pollutant' defiles the statutory purpose[,]" (Doc. 18 at 5), but he does not contend that this provision, or any other provision, is ambiguous.

to his hayfield, and that he did not intend to disrupt or destroy wetlands, does not alter this result.

In light of the court's determination that Righter is liable for violating the Clean Water Act, the court must next analyze what penalties are appropriate. Under 33 U.S.C. § 1319(b), the court has jurisdiction to "require compliance" with the CWA. However, "a district court may issue a permanent injunction under the Act only after a showing both of irreparable injury and inadequacy of legal remedies, and a balancing of competing claims of injury and the public interest." Natural Resources Defense Council v. Texaco Ref. & Mktg., 906 F.2d 934, 941 (3d Cir. 1990); see also Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. . . . Of course, Congress may intervene and guide or control the exercise of the court's discretion, but we do not lightly assume that Congress has intended to depart from established principles.").

Furthermore, under § 1319(d), Righter "shall be subject to a civil penalty not to exceed $25,000 per day for each violation." Unlike injunctive relief, the assessment of a penalty is mandatory when the court determines that a violation has occurred.[8] Section 1319(d) lays out factors for the court to consider when it

---

[8] Third Circuit precedent clearly states that § 1319(d) requires the court to assess penalties for violations of the CWA, even if the polluter becomes compliant with the CWA at some point after the complaint is filed. Natural Resources Defense Council v. Texaco Ref. & Mktg., 2 F.3d 493, 503 (3d Cir. 1993) ("Allowing a polluter to escape all liability through post-complaint compliance is at odds with the mandatory language of section 1319(d).").

8

determines what monetary penalty is suitable: "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."

The record presently before the court does not permit it to consider all of the matters which may be relevant to the determination of what remedies are suitable. Therefore, the court will direct the parties to submit supplemental briefing on the issue of remedies.

IV. **Conclusion**

Summary judgment is warranted, because there are no genuine issues of material fact in the instant case, and the government has established that it is entitled to judgment as a matter of law. Therefore, the court will grant the government's motion for summary judgment and instruct the parties to file supplemental briefing concerning remedies.

An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: June 30, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. 1:08-CV-0670 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| DAVID S. RIGHTER, | : | |
| | : | |
| Defendant | : | |

## ORDER

AND NOW, this 30th day of June, 2010, upon consideration of the motion for summary judgment (Doc. 14), filed by the United States of America, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 14) is GRANTED. See Fed. R. Civ. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of plaintiff and against defendant on all claims.

3. The motion (Doc. 12) to "preclude defense expert Michael Stover" is DENIED as MOOT.

4. On or before July 30, 2010, the parties shall submit briefs addressing the factors which the court must consider in determining what remedy is appropriate in the above-captioned case. See Natural Resources Defense Council v. Texaco Ref. & Mktg., 906 F.2d 934, 941 (3d Cir. 1990) (setting forth factors that the court must consider before granting injunctive relief), 33 U.S.C. § 1319(d) (setting forth factors that the court must consider before assessing a monetary penalty).

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge