**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION NO. 1:08-CV-0670** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID S. RIGHTER**, | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

**I.    Introduction**

The United States of America brought this action against David S. Righter ("Righter") pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387.  By memorandum dated June 30, 2010, (Doc. 21), the court granted the government's motion for summary judgment and held that Righter is liable for violating the CWA. See United States v. Righter, Civ. A. No. 1-08-CV-0670, 2010 WL 2640189 (M.D. Pa. June 30, 2010).  The court also ordered supplemental briefing on the nature and scope of appropriate remedies.  Id. at *4; see also 33 U.S.C. § 1319(d) (setting forth factors that the court must consider before assessing a monetary penalty); Natural Resources Defense Council v. Texaco Ref. & Mktg., 906 F.2d 934, 941 (3d Cir. 1990) (setting forth factors that the court must consider before granting injunctive relief). The parties have fully briefed the issues.  (See Docs. 23, 26).  For the reasons that follow, the court will impose a civil penalty of $37,500 and order Righter to implement an appropriate wetland restoration plan to be developed by the United States Army Corps of Engineers.

## II.  Discussion

The factual background of this matter is set forth in detail in the court's Memorandum and Order of June 30, 2010, familiarity with which is presumed. Under 33 U.S.C. § 1391(b), the court has jurisdiction to "require compliance" with the CWA, and compliance may be compelled through civil penalties and injunctive relief.  The court will discuss these available remedies *seriatim*.

### A.  Civil Penalty

The assessment of a civil penalty is mandatory when the court determines, as it did here, that a violation of the CWA has occurred.  See 33 U.S.C § 1391(d); Natural Resources Defense Council v. Texaco Ref. & Mktg., 2 F.3d 493, 503 (3d Cir. 1993) (noting the "mandatory language of section 1319(d)").  Under § 1319(d), a violator "shall be subject to a civil penalty not to exceed $25,000 per day for each violation."[1]  Such mandatory penalties are designed to deter both the specific violator and the public at large from violating the CWA.  See United States v. Mun. Auth. of Union Twp., 929 F. Supp. 800, 806 (M.D. Pa. 1996), aff'd, 150 F. 3d 259 (3d Cir. 1998).  Section 1319(d) also provides six factors that the court must consider when assessing a civil penalty: "[1] the seriousness of the violation or violations, [2] the economic benefit (if any) resulting from the violation, [3] any history of such violations, [4] any good-faith efforts to comply with the applicable requirements,

---

[1] 40 C.F.R. § 19.4 provides for inflationary adjustment of the maximum daily civil penalty.  $27,500 is the maximum daily penalty effective for the time after January 30, 1997 through March 15, 2004, the penalty increases to $32,500 for the period after March 15, 2004 through January 12, 2009, and $37,500 is the maximum penalty after January 12, 2009.  See id. at Table 1.

[5] the economic impact of the penalty on the violator, and [6] such other matters as justice may require." 33 U.S.C § 1391(d).

Despite the mandatory nature of § 1319(d), district courts are afforded wide discretion in setting the amount of the penalty within the statutorily prescribed maximum. United States v. Mun. Auth. of Union Twp., 150 F.3d 259, 264 (3d Cir. 1998) (citing Tull v. United States, 481 U.S. 412, 426-27 (1987)); see also United States v. Allegheny Ludlum Corp., 366 F.3d 164, 177 (3d Cir. 2004) ("The imposition of a penalty under § 1319(d) is subject to exercise of a district court's discretion."). In calculating an appropriate penalty, a district court is free to choose between the "top-down" or "bottom-up" approach. Mun. Auth. of Union Twp., 150 F.3d at 265; see also Allegheny Ludlum Corp., 366 F.3d at 178 n. 6 (stating that "the method used in assessing the civil penalty is best left to the trial court's discretion"). The "top-down" approach requires the court to calculate the maximum possible penalty, and then consider appropriate reductions based upon an examination of the six § 1319(d) factors. Mun. Auth. of Union Twp., 150 F.3d at 265 (citations omitted). On the other hand, the "bottom-up" approach requires the court to calculate the economic benefit a violator gained through noncompliance with the CWA and adjust the penalty upward or downward after considering the remaining

five factors. Id. (citations omitted). In the instant matter, the court will utilize the "bottom-up" approach and discuss the § 1319(d) factors accordingly.[2]

### 1. Economic Benefit

The CWA does not define the term "economic benefit." The Third Circuit, however, has explained that "[i]t is apparent . . .that the goal of the economic benefit analysis is to prevent a violator from profiting from its wrongdoing." Mun. Auth. of Union Twp., 150 F.3d at 263. In the instant matter, the government concedes that because Righter "is an individual whose violations were not actions undertaken in the furtherance of a business, the economic benefit he received is not large." (Doc. 26 at 10). While acknowledging that the economic benefit received "would not amount to thousands of dollars[,]" the government urges the court to consider the following: (1) that a neighboring farmer has annually cleared Righter's hayfield as a result of Righter constructing earthen crossings through the wetland area; and (2) that the neighbor has also provided Righter with plowing and towing services in exchange for farming the hay. (See id.). Righter contends that he "received no economic benefit what so ever [sic]" from his violation of the CWA, but

---

[2] The court notes that the maximum possible penalty in the instant matter is staggeringly high. By the government's calculations, Righter faces a maximum penalty of $132,412,500 for the time period of March 23, 2006 through August 12, 2010. (See Doc. 26 at 14, n.50). This estimate is low, however, because it is based on a maximum penalty of only $27,500 and does not include daily penalties accruing between August 12, 2010 and the present. See supra note 1. As the government concedes, such a high penalty is clearly inappropriate considering the facts of the case. (See Doc. 26 at 17). The court, therefore, need not calculate the precise maximum penalty and will proceed using the "bottom-up" approach.

acknowledges that his hayfield has been cleared and he has received plowing and towing services free of charge.  (See Doc. 23 at 3).

The court has examined the record and concurs with the government's position.  While the economic benefit Righter received from violating the CWA is not large, it is certainly not negligible or nonexistent as Righter contends.  But for his violation of the CWA, Righter would have had to pay for the services he received from the neighboring farmer.  Thus, the fair market value of the services he received is Righter's economic benefit, the amount he "profited from [his] wrongdoing."  Mun. Auth. of Union Twp., 150 F.3d at 263.  While it is difficult to determine the precise fair market value of the services Righter received, the court will adopt a conservative estimate of $1,000.  See Allegheny Ludlum Corp., 366 F.3d at 180 (noting that economic benefit "may not be capable of ready determination" and "need not be precise").  Thus, the court will begin its "bottom up" analysis of the remaining § 1319(d) factors starting from this low figure.

## 2.    Seriousness of the Violation

The court must next examine the seriousness of harm engendered by Righter's violation of the CWA.  Righter contends that the violation is not serious because: (1) "the impact on [his] property has been minimal"; (2) he used indigenous soil and stone in constructing the earthen crossings; (3) he only filled in approximately 0.1 acre of wetlands; and (4) his "installation of steel culverts beneath the mounds has allowed water to continue to flow throughout his property."  (See Doc. 23 at 2-3).  The government, in turn, notes that: (1) wetlands

are a dwindling natural resource that have long been recognized for their ecological value; (2) Righter, by his own admission, discharged twenty to twenty-five dump truck loads of pollutants into the wetland area; and (3) Righter's construction of earthen crossings impacts not only the wetlands he buried, but also surrounding wetlands and downstream waters adversely affected by the diverted water flow. (See Doc. 26 at 8-11).

Although this case does not present an egregious violation of the CWA, the court nevertheless concludes that Righter committed a serious violation worthy of a civil penalty above and beyond the value of the economic benefit he received. Righter discharged a substantial amount of pollutants into protected wetlands in violation of the CWA.[3]  The violation has continued unabated since March 23, 2006, if not earlier.  (See Doc. 26 at 14, n. 50).  Moreover, Righter's actions resulted in the destruction of wetlands on his property and potential harm to neighboring wetlands and downstream waters.  Such actions are sufficient to justify the imposition of a substantial penalty.  See Mun. Auth. of Union Twp., 929 F. Supp. 800, 807 ("[B]ecause actual harm to the environment is by nature difficult and sometimes

_____

[3] Righter's contention that he used indigenous soil and stone from a neighbor's property to construct the earthen crossings does not shield him from liability.  The toxicity of the pollutant discharged is merely one factor the court considers in assessing the seriousness of the harm.  See Pub. Interest Research Group v. Powell Duffryn Terminals, 913 F. 2d 64, 79 (3d Cir. 1990) (examining the number of violations, the amount by which the violations exceeded discharge permit limits, and the toxicity of the pollutants discharged); see also Mun. Auth. of Union Twp., 929 F. Supp. 800, 807-8 (discussing the number, degree, and frequency of violations).

impossible to demonstrate, it need not be proven to establish that substantial penalties are appropriate in a Clean Water Act case.").

### 3.   History of Violations

Both parties agree that Righter has no history of violating the CWA prior to this case. (See Doc. 23 at 4, Doc. 26. at 11). The court will weigh this factor in Righter's favor while fashioning an appropriate civil penalty.

### 4.   Good-faith Efforts to Comply with Requirements

The court next notes that Righter failed to engage in any good-faith compliance measures. Righter readily admits that he never obtained a discharge permit before altering the wetlands, (see Doc. 23 at 2, Doc. 26 at 11), and the record is devoid of any subsequent remedial efforts, (see Doc. 23 at 4). In fact, Righter is more accurately characterized as having acted in bad faith. After the potential CWA violations were brought to his attention on August 24, 2006, Righter refused to cooperate with the United States Army Corps of Engineers or Pennsylvania Department of Environmental Protection in their efforts to examine or remedy the wetland crossings. (See Doc. 26 at 12-13) (detailing the U.S. Marshals' execution of an administrative search warrant at Righter's insistence). Righter's insistence on the hard road led to the instant suit, and his failure to make good-faith efforts to comply with the CWA will be reflected in his civil penalty.

### 5.   Economic Impact of Penalty on Violator

Despite the court's June 30, 2010 memorandum (Doc. 21) ordering supplemental briefing on the § 1319(d) factors, see United States v. Righter, 2010

WL 2640189 at *4, Righter has provided only limited evidence of his current financial status to justify a reduction in his civil penalty based on the economic impact it will have on him. Righter generally avers that he is "on the brink of bankruptcy[,]" (Doc. 23 at 5), and points to a letter from his divorce attorney indicating that Mrs. Righter moved out of their marital residence and "left Mr. Righter there to pay the vast majority of substantial marital debt" in November of 2009 (id. at Ex. 2). His opposition brief indicates that he has substantial marital debt, including $65,000 in credit card balances, a mortgage of $204,000, automobile loans of $42,800, miscellaneous debt of $3,725 and substantial legal fees. While a violator's liabilities are certainly relevant to the potential economic impact of a civil penalty, so too are his or her assets and income. The government observes that as of late 2008, Mr. Righter's household income exceeded $120,000 and that he jointly owned additional real property. In sum, Mr. Righter's financial status is in dispute, but it is apparent to the court that he has sufficient resources to pay more than a *de minimus* penalty. Nevertheless, the court will consider Mr. Righter's substantial liabilities as a mitigating factor.

### 6.    Other Matters as Justice Requires

Section § 1391(d) empowers courts to consider "such other matters as justice may require" when setting a civil penalty. In addition to the factors discussed above, the court has also considered relevant caselaw. For example, in U.S. v. Scruggs, Civ. A. No. G-06-776, 2009 WL 500608 (S.D. Tex. Feb. 26, 2009), the defendant placed "approximately 0.02 acre of fill in three [wetland] areas of the

same property[,]" and the fill remained there for at least 55 days.  2009 WL 500608 at *4.  Scruggs had a decade-long history of noncompliance with the CWA, id. at *5, and as a result of one of Scruggs's prior violations, metal stakes delineating the wetlands were already in place on his property before the violation at issue occurred, id. at *1.  In light of this history, Scruggs's failure to comply with the CWA was less reasonable than that of Righter, who has no history of noncompliance.  See id. at *5 ("[I]t does not follow that [Scruggs] had a reasonable belief that a violation did not exist or that a permit was unnecessary.").  However, the instant case involves a greater displacement of wetlands than that which occurred in Scruggs, and a violation that is substantially longer in duration.

The court has also considered U.S. v. Heinrich, 184 F. App'x 542 (7th Cir. 2006).  In Heinrich, the defendant purportedly built a "logging" road on his wetland property in August 1997, which was actually intended to function as an access road for transportation of his sea planes from an upland lake to an aircraft hangar on his property.  The tract at issue consisted of approximately nine-and-one-half acres.  For at least eight years, he failed to restore the land to its previous conditions.[4] Heinrich was assessed $75,000 in penalties for these violations.  By contrast, Righter's noncompliance is shorter in duration, and unlike Heinrich, Righter had no advance notice, before constructing the crossings, that his land was a wetland subject to the CWA and other regulations.  However, the tract is approximately the

---

[4] An opinion by the District Judge in Heinrich makes it clear that, as of September 30, 2005, Heinrich had not completed removal of the fill on his wetlands. See U.S. v. Heinrich, No. 03-C-075-S, 2005 WL 2429825 (W.D. Wis. Sept. 30, 2005).

same size—10.04 acres (Doc. 15-2, Ex. B at 8)—and the nature of the discharge is roughly the same given that both matters involve the construction of crossings.

The court finds that the <u>Heinrich</u> case is a closer match than <u>Scruggs</u> and that the $75,000 penalty in <u>Heinrich</u> is an additional guideline that the court should consider. Given the mitigating factors in the instant matter, particularly the shorter period of noncompliance, and Righter's financial difficulties, the court believes that a lesser penalty is appropriate. After consideration of caselaw, and all the § 1319(d) factors, the court will impose a civil penalty of $37,500.

**B.** **Injunctive Relief**

Injunctions are a form of "appropriate relief" in Clean Water Act cases, <u>see</u> 33 U.S.C. § 1319(b), but courts are still obligated to consider traditional principles before exercising their equitable discretion. To wit, the Third Circuit has held that a district court may only enter a permanent injunction "after a showing both of irreparable injury and inadequacy of legal remedies, and a balancing of competing claims of injury and the public interest." <u>Texaco Ref. & Mktg.</u>, 906 F.2d at 941; <u>Powell Duffryn Terminals</u>, 913 F. 2d at 83 (same); <u>see</u> <u>also</u> <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312-13 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. . . . Of course, Congress may intervene and guide or control the exercise of the court's discretion, but we do not lightly assume that Congress has intended to depart from

established principles.").[5]  The court, therefore, will consider these traditional

equitable principles in the case *sub judice*.

### 1.     <u>Irreparable Injury and Inadequacy of Legal Remedies</u>

Before the court may grant injunctive relief, there must be a showing of both

irreparable injury and inadequacy of legal remedies.  <u>See</u> <u>id</u>.  The court's present

consideration of these factors is guided by the United States Supreme Court's

explanation that "[e]nvironmental injury, by its nature, can seldom be adequately

remedied by money damages and is often permanent or at least of long duration,

*i.e.* irreparable.  If such injury is sufficiently likely, therefore, the balance of harms

will usually favor the issuance of an injunction to protect the environment."  <u>Amoco</u>

<u>Production Co. v. Vill.of Gambell</u>, 480 U.S. 531, 545 (1987).

In the instant matter, Righter discharged a substantial amount of pollutants

into protected wetlands on his property.  As discussed above, this contamination

has had a direct, deleterious impact on the wetlands, and the altered water flow will

also negatively impact surrounding wetlands and downstream waters.  <u>See</u> <u>infra</u>

Part II.A.2.  This type of environmental harm cannot be cured by an award of

monetary damages; thus, legal remedies are inadequate.  Over the last three-and-

one-half years, Righter has also demonstrated his unwillingness to restore the

---

[5] In determining whether to grant a permanent injunction, courts must also consider whether the plaintiff has actually succeeded on the merits of his or her case.  <u>See</u> <u>Amoco Production Co. V. Vill. of Gambell</u>, 480 U.S. 531, 546 n. 12 (1987). On June 30, 2010, this court granted the government's motion for summary judgment as to liability.  <u>See</u> <u>United States v. Righter</u>, 2010 WL 2640189 at *4.  Thus, the United States has satisfied this prerequisite to injunctive relief.

wetlands or alleviate the harm done.  See infra Part II.A.4.  Righter's recalcitrance

indicates that, absent a court order, the contaminants and resultant harm will

remain unabated indefinitely.  This longstanding and potentially permanent harm

satisfies the irreparable injury requirement.

## 2.    Balance of Harm and Public Interest

The court must also balance the parties' competing claims of harm and the

public interest before granting an injunction.  Texaco Ref. & Mktg., 906 F.2d at 941.

The plaintiff's and the general public's interest in this matter, however, are one and

the same: the United States initiated this action to repair an environmental injury

and discourage others from discharging pollutants into the nation's waterways.  An

injunction ordering restoration of the wetlands would: (1) further this legitimate

shared interest in environmental protection; and (2) not harm the plaintiff in any

manner.  On the other side of the scale, a restoration plan would be an expense and

inconvenience for Righter, who would no longer be able to utilize the earthen

crossings he constructed through the wetlands to provide more direct access to his

hayfield.  (See Doc. 23 at 1).  The balance of the harms and public interest clearly

favors issuing an injunction; the government's and the public's interest in

preserving the environment outweighs Righter's inconvenience.

Therefore, after due consideration of the traditional equitable principles, see

Texaco Ref. & Mktg., 906 F.2d at 941, the court will issue an injunction ordering

Righter to: (1) grant the United States Army Corps of Engineers (the "Corps")

sufficient access to his property to enable it to formulate an appropriate wetland

restoration plan; (2) implement the plan at his own expense; and (3) grant the Corps such periodic access as is required by the Corps to verify that the plan has been implemented and that wetland restoration is effective. The Corps' restoration plan should be designed to: (1) confer maximum environmental benefits; and (2) be achievable as a practical matter.

**III.** <u>**Conclusion**</u>

Upon consideration of all of the § 1319(d) factors and the traditional equitable principles, <u>see</u> <u>Texaco Ref. & Mktg.</u>, 906 F.2d at 941, the court will: (1) impose a civil penalty of $37,500; and (2) issue an injunction compelling Righter to implement a wetland restoration plan at his own expense.

An appropriate order follows.

<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:        December 2, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION NO. 1:08-CV-0670** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID S. RIGHTER**, | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 2nd day of December, 2010, upon consideration of the

parties' briefs (Docs. 23, 26) regarding appropriate remedies in the instant matter,

and for the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that:

1.   Defendant is directed to pay $37,500 in civil penalties.  The United
     States Attorney is directed to provide instructions for payment of the
     penalty within fourteen (14) days of the date of this order.

2.   Defendant is required to: (1) grant the United States Army Corps of
     Engineers (the "Corps") sufficient access to his property located at 454
     Warm Springs Road, Landisburg, Pennsylvania to enable the Corps to
     formulate an appropriate wetland restoration plan; (2) implement the
     plan at his own expense; and (3) grant the Corps such periodic access
     as is required by the Corps to verify that the plan has been
     implemented and that wetland restoration is effective.  The Corps'
     restoration plan should be designed to: (1) confer maximum
     environmental benefits; and (2) be achievable as a practical matter.

3.   The case is CLOSED for administrative purposes only.  The court
     retains jurisdiction over this case for purposes of enforcing this order.




                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge